IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 8, 2025

**STATE OF TENNESSEE v. MELVIN LEE HARTH**

**Appeal from the Criminal Court for Davidson County**
**Nos. 2023-B-915, 2023-C-1671, 2023-C-1672          Khadija L. Babb, Judge**

_____

**No. M2024-01319-CCA-R3-CD**

_____

The Defendant, Melvin Lee Harth, appeals from his guilty-pleaded convictions for aggravated assault involving strangulation, a Class C felony; two counts of aggravated assault involving the violation of a prior court order, a Class C felony; false imprisonment, a Class A misdemeanor; and resisting arrest, a Class B misdemeanor. *See* T.C.A. §§ 39-13-102 (Supp. 2024) (aggravated assault); 39-13-302 (2018) (false imprisonment), 39-16-602 (2018) (resisting arrest). The trial court ordered the Defendant to serve an effective nine-year sentence in confinement. On appeal, the Defendant contends the court erred by denying alternative sentencing. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JILL BARTEE AYERS and JOHN W. CAMPBELL, SR., JJ., joined.

Leah R. Wilson, Nashville, Tennessee, for the appellant, Melvin Lee Harth.

Jonathan Skrmetti, Attorney General and Reporter; Elizabeth Evan, Assistant Attorney General, Glenn Funk, District Attorney General; and Macy Pasavento, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Defendant was charged in three separate cases for the domestic abuse of his then-girlfriend for acts occurring on February 7, February 19-20, and April 26-28, 2023. The Defendant pleaded guilty to aggravated assault involving strangulation, two counts of aggravated assault involving the violation of a prior court order, false imprisonment,

and resisting arrest. As part of the plea agreement, the sentence for the counts in each case would run concurrently for an effective three years, and the effective three-year sentences for each case would run consecutively, for a total effective nine-year sentence at 100 percent service. The trial court was to determine the manner of service.

As a prefatory matter, we note that the transcript of the guilty plea hearing is not part of the appellate record. *See State v. Keen*, 996 S.W.2d 842, 843-44 (Tenn. Crim. App. 1999) ("[A] transcript of the guilty plea hearing is often (if not always) needed in order to conduct a proper review of the sentence imposed."); *see also* T.R.A.P. 24(b) (stating that the appellant has the duty to prepare a record which conveys a "fair, accurate, and complete account of what transpired with respect to those issues that are the bases of appeal."). An appellant who fails to include the transcript of the guilty plea hearing in the record risks waiver of a sentencing issue. Nevertheless, an appellate court will consider on a case-by-case basis whether a record is sufficient for review. *State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012); *see State v. Darrius Levon Robinson*, No. E2023-00391-CCA-R3-CD, 2024 WL 837945, at *5 (Tenn. Crim. App. Feb. 28, 2024). In the present case, the record is sufficient for review based on the facts stated in the presentence report, and we will consider the Defendant's sentencing issue on its merits, notwithstanding the absence of the transcript of the guilty plea.

At the sentencing hearing, the presentence report was received as an exhibit. It reflected that on February 7, 2023, the Defendant punched and kicked the victim until she fell to the ground at which time he got on top of her and strangled her. The Defendant broke the victim's television and took away her cell phone after she called 9-1-1 for help. The victim had injuries to her arms, back, and knee. On February 19, 2023, the Defendant bit the victim's shoulder because the victim tried to stop the Defendant, who had her cell phone, from leaving the victim's apartment, and on February 20, the Defendant violated a bond condition to stay away from the victim's apartment and was arrested. On April 26, the Defendant refused to leave the victim's apartment and blocked the front and back doors with furniture to prevent the victim from leaving. The Defendant grabbed the victim's cell phone when she tried to call the police and hit the victim with a broom until the handle broke. He then hit her with his fists. The victim had bruising and lacerations to her arm and swelling and bruising of an eye, her face, and chest. On April 28, the victim was at her apartment, and the Defendant grabbed her cell phone so she could not call the police. He threw the victim against a wall and strangled her until the victim's child entered the room and told the Defendant to stop. The Defendant damaged numerous items in the apartment. The Defendant was arrested on May 31 after a "barricade situation."

The presentence report indicated that the Defendant did not complete high school, used marijuana daily, and violated probation in 2017. The Defendant's siblings lived in Memphis, and he had three children. The Defendant reported past employment as a cook

for a fast-food restaurant. The risk and needs assessment resulted in a high score for violence with a recommendation for additional treatment-based housing and programs. The assessment report noted that the Defendant exhibited high risk for aggression, as he "has displayed threatening, aggressive or violent behaviors in the community during his lifetime," and that "aggression is an on-going concern."

The victim testified that she and the Defendant share one child, and her other three children looked to the Defendant as a father figure. She said that the Defendant helped her financially and with childcare and that he had a job opportunity in Nashville. The victim asked the court to order probation and to require the Defendant to attend anger management classes. She said that, despite the previous assaults, she felt safe being around the Defendant. The victim acknowledged that the Defendant, while out of jail on bond, continued to contact her in violation of a court order.

The Defendant testified that, while in jail, he completed the Skills for a Violent-Free Environment (SAVE) program and that it had helped him "deal with things" and "go about things better." The Defendant acknowledged the serious nature of the charges against him and agreed that he would benefit from anger management classes. The Defendant said he had an offer for work in the Nashville area and hoped to "take care of his kids," "be better to [the victim]," and "become a better person." On cross-examination, the Defendant acknowledged that, after completing the SAVE program, he continued to contact the victim and told her not to come to court. The Defendant also agreed that he had violated the conditions of his bond when he assaulted the victim on two occasions. The Defendant said that he had a prior unlawful possession of a firearm charge, for which he received judicial diversion but was later charged with especially aggravated robbery and attempted second degree murder and eventually pleaded guilty to reckless endangerment. The Defendant said that he was age twenty-nine, that he had two young daughters in Memphis, that he had moved to Nashville to be with the victim, and that he was sorry for his conduct toward the victim.

The trial court heard arguments from the parties and took sentencing under advisement. At a subsequent hearing, the court ordered the Defendant to serve his nine-year sentence in confinement and entered a written order which provided the following:

> In making the sentencing determination, the Court has considered the following: (1) the evidence received at the sentencing hearing; (2) the Pre-Sentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) defendant's statements made on

-3-

defendant's own behalf about sentencing, and; (8) the result of the validated risk and needs assessment conducted by the department and contained in the Pre-Sentence report. . . .

. . . .

[T]he Court finds that enhancement factors numbers one (1) and eight (8) apply.

Regarding factor number one (1*), the Defendant has a previous history of criminal convictions or criminal behavior; in addition to those necessary to establish the appropriate range.* The Court notes that the Defendant has at least one (1) prior felony conviction and two misdemeanor convictions, and all these convictions involve assaultive behavior or guns. The Court gives this enhancement factor great weight.

As for factor number eight (8), *The Defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community.* The Defendant was previously granted Judicial Diversion supervised probation and he violated when he was convicted of the felony offense of Reckless Endangerment with a Deadly Weapon. The Court gives this enhancement factor great weight.

. . . .

In order to determine the most appropriate manner of service, we have to start with the Defendant's history. The Defendant is twenty-nine (29) years old. At the age of twenty-one (21), he was given Judicial Diversion for the crimes of Assault and Unlawful Possession of a Weapon and placed on supervised probation for eleven (11) months and twenty-nine (29) days. While on this probation, the Defendant committed, and was later convicted of, the felony offense of Reckless Endangerment with a Deadly Weapon. He served three hundred forty-six (346) days incarcerated for that conviction.

At some point, the Defendant moved to Nashville and met [the victim]. They have one (1) son together. The Court cannot speculate about the nature of their relationship prior to February 6, 2023, but the following three (3) month period of their relationship is undeniable. On February 7, 2023, the Defendant assaulted and manually strangled [the victim]. This physical attack served as the basis for the Felony Aggravated Assault by strangulation conviction in case 2023-B-915. On February 19, 2023, the

Defendant posted bond on this charge and the court-imposed bond conditions required him to stay away from [the victim].

Hours after his release, the Defendant ignored the bond conditions when he returned to [the victim's] home and assaulted her again. Eventually, this attack served as the basis for the Felony Aggravated Assault conviction involving violating a court order, in case 2023-C-1672. When he was arrested in this case, he was involved in a skirmish with police that resulted in the misdemeanor conviction for Resisting Arrest, also in case 2023-C-1672.

On February 21, 2023, the Defendant posted bond on these charges. Once again, mandatory bond conditions were imposed requiring the Defendant to stay away from [the victim], yet two (2) months later, while free on the bond from the two (2) prior domestic assaults, the Defendant went back to [the victim's] residence, and attacked her again. This time he manually strangled her, beat her, and held her against her will. All of this was done in the presence of one of her children. This attack served as the basis for the Felony Aggravated Assault conviction involving violating a court order and a misdemeanor False Imprisonment conviction in case 2023-C-1671.

In that three (3) month span, the Defendant committed three (3) felony domestic related Aggravated Assaults; one (1) domestic misdemeanor; and one (1) police related misdemeanor.

After evaluating this history, the Court makes the following findings: 1) the Defendant has a history of ignoring and violating court orders; 2) the Defendant has a history of ignoring bond conditions; 3) the Defendant has a history of violating the conditions of sentences involving release into the community; and 4) the Defendant has a persistent history of violent behavior against [the victim].

It is the Court's opinion that the Defendant's history precludes a grant of full probation. Further, it is the Court's opinion that his history, combined with the particular circumstances in these cases, also make a sentence of split confinement unjustified. It is the Court's opinion that a comprehensive analysis of all the evidence in these cases clearly establishes that complete confinement is necessary to protect society in general, and [the victim] in specific. In the past, the Defendant has flagrantly ignored bond conditions, court orders, and supervised probation conditions. None of the Court's measures have been able to deter the Defendant from his

persistent desire to violently attack [the victim]. The only measure that has successfully kept the Defendant away from [the victim] has been incarceration.

For the foregoing reasons, the Court sentences the Defendant to a sentence of complete confinement and orders that the Defendant serve the nine (9) year sentence incarcerated. . . .

This appeal followed.

The Defendant contends that the trial court erred by denying alternative sentencing. Specifically, the Defendant argues that the court erred in its application of enhancement factors (1) and (8) and by failing to state its reasoning for finding confinement necessary in each individual case. The State responds that the court did not abuse its discretion by ordering the Defendant to serve his sentence in confinement and that no legal authority requires a court to repeat its findings for each separate case when sentencing for multiple cases at one hearing. We agree with the State.

This court reviews challenges to the manner of service of a sentence within the appropriate sentence range "under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). A trial court must consider any evidence received at the trial and sentencing hearing, the presentence report, the principles of sentencing, counsel's arguments as to sentencing alternatives, the nature and characteristics of the criminal conduct, any mitigating or statutory enhancement factors, statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee, any statement that the defendant made on his own behalf, the potential for rehabilitation or treatment, and the result of the validated risk and needs assessment. T.C.A. §§ 40-35-103 (2019) (subsequently amended), -210 (2019); *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991); *State v. Moss*, 727 S.W.2d 229, 236 (Tenn. 1986); *State v. Taylor*, 744 S.W.2d 919 (Tenn. Crim. App. 1987)); *see* T.C.A. § 40-35-102 (2019).

The standard of review for questions related to probation or any other alternative sentence is an abuse of discretion with a presumption of reasonableness. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). Generally, probation is available to a defendant sentenced to ten years or less. T.C.A. § 40-35-303(a) (Supp. 2022) (subsequently amended). The burden of establishing suitability for probation rests with a defendant, who must demonstrate that probation will "'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Souder*, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (quoting *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)); *see* T.C.A. § 40-35-303(b); *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008).

A sentence is based upon "the nature of the offense and the totality of the circumstances," including a defendant's background. *Ashby*, 823 S.W.2d at 168; *see State v. Trotter*, 201 S.W.3d 651, 653 (Tenn. 2006). A trial court is permitted to sentence a defendant who otherwise qualifies for probation or alternative sentencing to incarceration when:

> (A) [c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) [c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) [m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1)(A)-(C); *see Trotter*, 201 S.W.3d at 654. A trial court must consider (1) the defendant's amenability to correction, (2) the circumstances of the offense, (3) the defendant's criminal record, (4) the defendant's social history, (5) the defendant's physical and mental health, and (6) the deterrence value to the defendant and others. *See State v. Trent*, 533 S.W.3d 282, 291 (Tenn. 2017) (concluding that the same factors used to determine whether to impose judicial diversion are applicable in determining whether to grant probation); *see also State v. Electroplating*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998); *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996).

Likewise, a trial court's application of enhancement and mitigating factors are reviewed for an abuse of discretion with "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Bise*, 380 S.W.3d at 707. "[A] trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Id*. at 706. "So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed . . . within the appropriate range" will be upheld on appeal. *Id*.

The Defendant contends that the trial court erred by considering his prior misdemeanor convictions when applying enhancement factor (1). *See* T.C.A. § 40-35-114(1). The State argues that consideration of misdemeanor convictions is appropriate. Tennessee Code section 40-35-114(1) provides that a court shall consider, but is not bound by, advisory enhancement factors including whether "[t]he defendant has a

previous history of criminal convictions or criminal behavior[.]" We have held that a trial court does not err by considering a defendant's history of misdemeanor convictions when applying enhancement factor (1). *See State v. Jeffrey Lee Potts*, No. M2020-01623-CCA-R3-CD, 2022 WL 2348233, at *27, (Tenn. Crim. App. June 29, 2022), *perm. app. denied* (Tenn. Dec. 14, 2022). "Furthermore, when presented with an agreed upon sentence, the trial court's application of enhancing or mitigating sentencing factor language . . . has little legal significance on the question of alternative sentencing." *State v. David Allen Donton, Jr.*, No. E2021-00721-CCA-R3-CD, 2022 WL 3905088, at *5 (Tenn. Crim. App. Aug. 31, 2022). Here, the court noted that the Defendant had one prior felony conviction and two misdemeanor convictions, all involving assaultive behavior or guns. The court did not abuse its discretion when applying enhancement factor (1). The Defendant is not entitled to relief on this basis.

The Defendant contends that the trial court erred by considering the Defendant's violation of bond conditions when applying enhancement factor (8). *See* T.C.A. § 40-35-114(8). According to the Defendant, enhancement factor (8), stating that the defendant "failed to comply with the conditions of a sentence involving release into the community," does not relate to a defendant's violation of bond conditions when the defendant had not yet been sentenced. The State argues that the court properly looked to the Defendant's prior probation violation when applying enhancement factor (8). The Defendant testified that, while on probation, he was charged with especially aggravated robbery and second degree murder and that he pleaded guilty to reckless endangerment. When applying enhancement factor (8), the court relied upon the Defendant's conviction for reckless endangerment while he was on probation. The court did not abuse its discretion when applying enhancement factor (8). The Defendant is not entitled to relief on this issue.

The Defendant contends that the trial court erred by failing to address sentencing factors for each individual case. The State counters that the court was not required to repeat its findings for each case when sentencing for multiple cases in one hearing. Here, the court considered factors consistent with the purposes and principles of sentencing and determined that the Defendant had a history of violating court orders and of violent behavior, much of which was perpetrated against the victim. The court concluded that confinement was necessary to protect society and the victim, as the Defendant had repeatedly violated the conditions of his release and attacked the victim. The record supports the court's determination to order confinement because of the need to protect society and because measures less restrictive than confinement had been applied unsuccessfully to the Defendant. The Defendant has not provided any legal authority that requires a court to repeat sentencing factors for each individual case when they are jointly addressed in an agreed-upon plea agreement. The court did not abuse its discretion by ordering the Defendant to serve his nine-year sentence in confinement. The Defendant is not entitled to relief.

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.


s/ **Robert H. Montgomery, Jr.**

ROBERT H. MONTGOMERY, JR., JUDGE